# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JUSTIN EDMISTON, | Case No.: 3:21-cv-00245-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 28 |
| SUCIDO, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment or partial summary judgment as to his Eighth Amendment excessive force claim against Saucedo[1]. (ECF No. 28.) Saucedo filed a response. (ECF No. 30.) Plaintiff filed a reply. (ECF No. 31.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). The court screened Plaintiff's amended complaint (ECF No. 7), and Plaintiff subsequently was granted leave to file a second amended complaint (SAC) (ECF No. 37).

---

[1] Mistakenly identified by Plaintiff as Sucido.

1  The court screened Plaintiff's SAC and allowed him to proceed with Eighth Amendment

2  excessive force claims against Saucedo, Weiland, and Gittere. (ECF No. 37.)

3  Plaintiff alleges he was protesting the lack of shower and recreation time during morning

4  medication pass by capturing his food slot. Saucedo used a service key to inflict several gashes

5  into Plaintiff's right upper forearm that were one and a half inches deep and required three

6  sections of stitches. Plaintiff was unarmed and behind a locked cell door when this incident

7  occurred.

8  Plaintiff goes on to allege that while he was in route to the infirmary for these injuries, he

9  saw Warden Gittere, and Plaintiff said, "fuck you." Weiland started twisting Plaintiff's right

10  thumb at an awkward angle, trying to dislocate it. Plaintiff told Weiland to stop, and Weiland

11  then swept Plaintiff's legs out from under him while Plaintiff was heavily restrained. Weiland

12  also pressed Plaintiff's shoulder blade hard into the pavement and started smearing Plaintiff's

13  face into the concrete which caused deep scrapes, bruising, and scars. Plaintiff was already

14  severely injured and restrained when this occurred. In addition, Plaintiff claims that Weiland

15  fastened Plaintiff's handcuffs and leg irons so tight that it made an immediate indentation and

16  impeded the flow of blood to his hands.

17  Plaintiff alleges that Gittere was present when Weiland slammed his face into the

18  concrete while heavily restrained, and Gittere failed to intervene to protect Plaintiff from harm.

19  Before Plaintiff was granted leave to file the SAC, he filed this motion for summary

20  judgment or partial summary judgment as to Saucedo. While the filing of an amended pleading

21  may moot a motion to dismiss or motion for summary judgment, the allegations of the SAC as to

22  Saucedo are substantially the same as were asserted in the amended complaint when Plaintiff

23  filed his motion. Therefore, the court construes Plaintiff's motion as applying to the SAC.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

1  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

2  *Anderson*, 477 U.S. at 249.

3      In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

4  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

5  come forward with evidence which would entitle it to a directed verdict if the evidence went

6  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

7  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

8  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

9  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

10 defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

11 an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

12 party cannot establish an element essential to that party's case on which that party will have the

13 burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

14     If the moving party satisfies its initial burden, the burden shifts to the opposing party to

15 establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

16 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

17 dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

18 be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

19 *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

20 (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

21 by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

22 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

23

4

1  pleadings and set forth specific facts by producing competent evidence that shows a genuine

2  dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

3  **III. DISCUSSION**

4  **A. Excessive Force Standard**

5  The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S.

6  Const.  amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

7  humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

8  quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

9  unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v.  Albers*, 475

10  U.S. 312, 319 (1986)).

11  "[W]henever prison officials stand accused of using excessive physical force in violation

12  of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

13  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

14  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

15  *McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

16  Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm,

17  contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

18  475 U.S. at 327). While *Whitley* used the phrase "maliciously and sadistically," an excessive

19  force claim does not require proof the officer enjoyed the use of force. *Hoard v. Hartman*, 904

20  F.3d 780 (9th Cir. 2018). Instead, the focus is on whether the officer had purpose to cause harm:

21  "[A]n officer who harms an inmate in part of a good-faith effort to maintain security has acted

22  constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' …

23

has engaged in excessive force, provided that the other elements of excessive force have been met." *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).

In determining whether the use of force is excessive, courts are instructed to examine "the extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

**B. Summary of Evidence**

In his affidavit, Plaintiff states: On April 6, 2022, Plaintiff captured his food slot to protest shower/yard access. He gently pushed the shield to try and fend Saucedo away from his door. Saucedo responded by inflicting lacerations/puncture wounds to Plaintiff's right forearm, which required .6cm, .75cm, and 2cm sutures. Plaintiff claims the force was applied maliciously and sadistically for the purpose of causing harm because Plaintiff was being compliant. As a result of Saucedo's conduct, Plaintiff's right arm was twice the size of his left, he suffered from permanent scar tissue and disfigurement, possible nerve damage, and significant blood loss. (ECF No. 28 at 4-5.)

Both parties rely on the NDOC Investigation Detail Reports from the incident to support their position.[2] The reports reflect that the incident was referred for investigation by William Gittere. The reason for the referral is that a video (which has not been submitted to the court) showed that the use of force may have been unauthorized, unnecessary and/or excessive, and the

_____

[2] It appears Saucedo has submitted complete copies of the reports while Plaintiff's submission is missing pages.

officer's (Saucedo's) report made statements that are contradictory to the video. (ECF No. 30-1 at 2.)

Saucedo's report stated that he was working his post on April 6, 2021, as the floor officer in Unit 7, and was escorting the medical nurse for pill call to cell 7A-11, which housed Plaintiff, a High Risk Potential (HRP) inmate. (*Id*.) Before opening Plaintiff's food-slot, Saucedo used the capture shield that he had in his left hand and used his right hand to get his food slot key so that he could open the food slot. Once he opened the food slot with his right hand, while holding the shield in the left hand, the medical nurse placed pills on the food slot. Plaintiff then punched the capture shield several times and grabbed the shield. Plaintiff was acting and speaking erratically as if under the influence of a controlled substance. Saucedo then used force by striking Plaintiff with his key several times so that Plaintiff would release the capture shield. Plaintiff did release the shield and brought his arm back inside his cell. As a result of the attempt to maintain possession of the capture shield, Saucedo had minor scrapes on his right hand. (*Id*. at 3.)

Senior Correctional Officer Michael McArdle's report states that he was in the control room and observed Plaintiff with his arm out of the food slot grabbing at Saucedo while Saucedo was escorting the medical nurse for pill call. McArdle then observed Saucedo hit Plaintiff in the arm. Plaintiff pulled his arm into the cell and Saucedo closed the food slot door. (*Id*.)

Nurse Jennifer Hunt was the nurse administering medications and was escorted by Saucedo. She reported that when they approached Plaintiff's housing unit, Plaintiff appeared agitated. Saucedo went to retrieve the shield to assist with medication administration. When Plaintiff was asked how he was doing, he said, "Not very good. They took away my tier time. They took everything of mine." Saucedo opened the food slot, and she placed the medication cup within the inmate's reach. Plaintiff reached out of the food slot and retrieved the medications

with his left arm. He then had an aggressive tone with Saucedo. Plaintiff reached out through the

food slot with his right arm and hit the shield with a closed fist approximately three times. She

heard what sounded like a metal-on-metal sound approximately three times. Saucedo made a

striking motion toward the food slot. Plaintiff continued to yell at Saucedo in an aggressive tone

and said Saucedo should come into his cell and fight. Saucedo did not say anything. Plaintiff

pulled his right arm back into the housing unit and Saucedo closed the food slot. Plaintiff yelled

out and pushed his right arm up against the door window and she observed a moderate amount of

active bleeding to the top of the right forearm. (*Id*. at 4.)

ESP Inspector General Criminal Investigator Hal Hollingsworth's report states that he

was summoned to Warden Gittere's office on April 6, 2021, along with Associate Warden David

Drummond. They all reviewed surveillance video from ESP from that day and Plaintiff's unit

and wing at approximately 7:50 a.m. Hollingsworth saw Saucedo and a female nurse standing in

front of cell 7B11, which had a HRP sign on the door to help staff identify the inmate's

classification. Saucedo opened the food slot and placed the plastic shield over the food slot with

his left arm. The nurse appeared to place the medication on the food slot for the inmate to take

and stepped back. Saucedo kept the shield over the food slot and an inmate's arm appears in the

food slot under the shield. The inmate appeared to hit the shield with his hand. Saucedo then

removed the shield and with his right arm he struck the inmate's arm at least nine times. Saucedo

then leaned the shield against the tier wall next to the cell door while the food slot was still open.

The inmate appeared to pull his arm back into the cell and Saucedo secured the food slot. (*Id*. at

4-5.)

Hollingsworth took 21 photographs as well as a video of Plaintiff's wounds. Plaintiff had

one puncture wound to the top of the right hand and three puncture wounds on his right forearm

below the elbow. The top of the left shoulder had an abrasion that was bleeding along with a bleeding abrasion on his cheek. The puncture wounds were stitched by Nurse Practitioner Martin. Saucedo had an abrasion on the bottom of his right hand. (*Id*. at 5.)

Nurse Practitioner Marin reported that Plaintiff had: superficial abrasions, a right upper forearm .5cm puncture wound, a .75cm puncture wound, a .15cm puncture wound, and a 2cm puncture wound. (ECF No. 30-2 at 3.) The wounds were sutured, and Plaintiff was given a right forearm pressure dressing. (*Id*. at 4.)

**C. Analysis**

Preliminarily, Saucedo argues that Plaintiff has not provided a concise statement of undisputed facts, but he includes these within his argument and never specifically asserts that facts are undisputed.

A motion for summary judgment and response thereto must include a concise statement setting forth each material fact that the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies. LR 56-1; Fed. R. Civ. P. 56(c)(1)(A).

While Plaintiff could have more clearly organized and labeled his purported undisputed facts, Plaintiff's statement is concise, and he does reference various evidence that he claims supports his position. The court finds this is sufficient.

The court now turns to the merits of Plaintiff's motion.

First, while Plaintiff is adamant that the force was inflicted maliciously for the purpose of causing harm, Saucedo maintains that he was utilizing force in an effort to restore discipline after Plaintiff punched and grabbed Saucedo's shield.

Plaintiff contends that there was no need to utilize force as Plaintiff was in his cell and unarmed. Saucedo asserts that Plaintiff was agitated and acting erratically and yelling aggressively when he punched and grabbed the shield. Saucedo maintains the force used was reasonable in amount and necessary to restore discipline. According to Saucedo, it was only after he struck Plaintiff several times with his key that Plaintiff eventually released the capture shield and brought his arm back into the food slot. Saucedo points out that Plaintiff was reasonably perceived as a threat because he was classified to HRP status, and Plaintiff had assaulted correctional officers on two prior occasions. (ECF No. 30-3.)

With respect to the extent of Plaintiff's injuries, Saucedo argues they were not as extensive as Plaintiff alleged. Plaintiff's motion appears to concede that the puncture wounds were not as big as alleged in his complaint. However, Plaintiff still sustained puncture wounds that required sutures. Saucedo argues the treatment was limited to suturing these wounds, and the superficial abrasions required no treatment. Saucedo is correct that there is no evidence in the record to support Plaintiff's allegations or arguments that his arm was shattered, that he suffered permanent scar tissue and disfigurement, possible nerve damage or significant blood loss, or that his injuries required surgery.

There are various disputed material facts. The parties dispute whether the force was applied in a good faith effort to restore discipline or for the purpose of causing harm. The record presents a dispute concerning the extent of Plaintiff's alleged injuries. The need for the application of force and the relationship between that need and the amount of force used is also in dispute. There is also a dispute regarding whether Saucedo reasonably perceived a threat from Plaintiff that justified the force used. Finally, the video of the incident was not submitted to the

court, but Investigator Hollingsworth's summary of the evidence presents a question regarding the accuracy or credibility of Saucedo's report of the incident.[3]

For these reasons, Plaintiff's motion should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment or partial summary judgment (ECF No. 28).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: August 30, 2022

_____
Craig S. Denney
United States Magistrate Judge

---

[3]Nor does it appear that the outcome of the investigation was provided to the court.